ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
INDIRA J. CAMERON-BANKS (State Bar No. 248634)
Assistant United States Attorney
SEKRET T. SNEED (State Bar No. 217193)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone:   (213) 894-3551
    Facsimile:    (213) 894-7819
    E-mail:      indira.j.cameron-banks@usdoj.gov
                   sekret.sneed@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

E-FILED: 11/18/10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PETER G. MORRIS, *et al.*<br><br>    Defendants. | No. CV10-4436 GHK (RC)<br><br>[~~PROPOSED~~] FINDINGS OF FACT AND CONCLUSION OF LAW AGAINST DEFENDANTS ELIZABETH AGUILERA AND ALICE YOUNG |

After full consideration of the papers in support of the Application for Temporary Restraining Order ("Application") filed by plaintiff United States of America ("United States"), and the lack of any filed oppositions by defendants Alice Young and Elizabeth Aguilera, the Court deems the Application to be a Motion for Preliminary Injunction unopposed by Young and Aguilera, and determines the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1.  Aguilera holds a State of California real estate salesperson license. (Declaration of HUD-OIG Forensic Auditor Cindi Connor ["Connor Decl."], ¶ 4, Ex. 1c.)  While she was officially employed by defendant Peter Morris d/b/a The Team Realty Group ("Team Realty") from October 2008 to August 2009, she worked closely with defendants Peter Morris individually and Team Realty out of the Riverside office and continues to do so to the present.  (Declaration of HUD-OIG Special Agent Terrence West ["West Decl."], ¶ 14, Ex. 14.)

2.  Young also holds a State of California real estate salesperson license. (Connor Decl., ¶ 4, Ex. 1a.)  Team Realty served as Young's employing broker from May 2008 until June 2010.  Young's license expired on September 11, 2010.  (*Id.*)

### Aguilera's Acts

3.  In or around June 2008, Aguilera, through Team Realty, served as the real estate agent for Borrowers[1] 3A and 3B's purchase of certain real property on Bright Way in Perris.  (Connor Decl., ¶ 8, Ex. 2a-8.)  Borrowers 3A and 3B applied for and obtained an FHA-insured mortgage loan in the amount of $214,963.  (*Id.*, ¶ 20.)  Borrowers 3A and 3B's mortgage loan application reflects that Borrower 3A was employed and earning an annual salary over $130,000, and the mortgage loan

---

[1] In order to protect the privacy of the borrowers, the United States adopted identifying numbers for certain borrowers in the Complaint and used the same numbers to represent the same borrowers in its Application for Temporary Restraining Order.

1

application file contains images of fictitious paystubs, paychecks, bank statements, tax documents, verifications of employment ("VOE"), and a letter purportedly signed by Borrower 3A describing details of his employment. (Connor Decl., ¶¶ 11-15, Exs. 2d-2h & ¶ 17, Ex. 2j.)

4. The Government's investigation, however, revealed that the statements and documents supporting these representations in the mortgage loan application are indeed false, fictitious and fraudulent, and that defendant Peter Morris and Aguilera worked in concert with each other and other defendants to conceal their falsity. (Connor Decl., ¶¶ 8, 14 & 19, Exs. 2a-2b, 2l.)

5. For example, the subpoena response from the California Employment Development Department ("EDD") reveals that since, at least 2005, Borrower 3A has not been employed, or earned an income. (Declaration of AUSA Indira J. Cameron-Banks, Decl.¶ 8, Ex. 16.) Further, aware of this fact, Aguilera carefully counseled Borrowers 3A and 3B as to what Borrower 3A's employer response should be to any VOE inquiries received regarding his employment. (Connor Decl., ¶ 19, Ex. 2l.) Additionally, HUD-OIG confirmed that Borrowers 3A and 3B's bank statements were digitally or electronically altered to reflect the bi-weekly deposits of Borrower 3A's purported salary. (Connor Decl., ¶ 14.)

6. In addition, Aguilera and Peter Morris recently worked in concert to conceal Morris' receipt of improper commissions through the short-sale of his own properties from the bank mortgage-holder. (West Decl., ¶¶ 10-15, Exs. 8a and 8b.) Within months of securing the $525,000 mortgage loan, Morris defaulted on the mortgage loan. (*Id*., ¶ 11.) In order to relieve himself entirely of the mortgage loan obligation, Morris again made false representations to the mortgage lender in order to convince the bank to allow a short sale to proceed on the property for less than $200,000. (*Id*., ¶ 12.) The bank, convinced by the false representations, allowed a

short-sale to proceed on the property, which Aguilera handled as the real estate agent. (*Id.*, ¶¶ 13-14.)

### Young's Acts

7. Young not only served as a real estate salesperson working for Morris, she, along with several of her close family members that she directed to Morris, worked in concert with Morris in order to secure government-insured mortgage loans based on false representations, statements and documents. (West Decl. ¶¶ 7, 16-17; Cameron-Banks Decl., ¶ 5, Ex. 10.)

8. In or around August 2008, Aguilera, through Team Realty, is listed as the real estate agent for Borrowers 6A and 6B's purchase of certain real property on Braidwood Court in Victorville. (Connor Decl., ¶ 32, Ex. 4a-9.) Borrowers 6A and 6B, however, who are Young's parents admitted that Young served as the real estate agent on this transaction. (West Decl., ¶ 7.) Young then, in concert with defendant Peter Morris, originated and processed an FHA-insured mortgage loan in the amount of $184,978 for Borrowers 6A and 6B to purchase this property as "straw-buyers" for Young's sister and her nephew. (*Id.*)

9. The mortgage loan file contains statements regarding Borrowers 6A and 6B's intention to reside in the purchased property, when they, along with Young, knew that Young's sister and her son were the actual purchasers of the property. (*Id.*; Connor Decl., ¶ 33, Exs. 4b-1 & 4b-4.) In addition to concealing Young's sister and son as the actual purchasers of the property, the documents supporting the mortgage loan application contain a fraudulent rental agreement between Borrowers 6A and 6B and Young's sister reflecting Young's sister as a tenant of the property in which Borrowers 6A and 6B resided in at the time they applied for the mortgage loan for the Braidwood Court property. Under the rental agreement, Young's sister paid Borrowers 6A and 6B $1,650 in monthly income which counted as income towards the mortgage loan application for the Braidwood Court property. (Connor Decl., ¶ 35, Ex. 4d.)

3

10. In addition to the false rental income being considered as part of their application for the FHA-insured mortgage loan, Borrowers 6A and 6B's mortgage loan application falsely inflated the monthly social security disability benefits received by Borrower 6B by over $1,000. (West Decl., ¶ 8.) Borrower 6B confirmed that the letter from the SSA contained in the HUD Case Binder was indeed altered and that she only received approximately $345 on a monthly basis, instead of the $1,352 reflected in the letter. (*Id.*; Connor Decl., ¶ 38, Ex. 4g.) Accordingly, the bank statements contained in the file also were altered to reflect the falsely inflated amounts. (Connor Decl., ¶ 37, Ex. 4f.) Overall, Borrowers 6A and 6B's income was falsely inflated by $2,657 monthly, or over $31,000 annually.

11. In another example involving Young's family, Young's sister, aided by Peter Morris, secured two mortgage loans on certain real property located at Brandt Drive in Moreno Valley, and promptly defaulted on her payments in connection with the loans. (Cameron-Banks Decl. ¶ 2, Ex. 10.) Peter Morris attempted to help Young's sister halt foreclosure proceedings by (1) directing her to deed the property to defendant Celeste Montoya, and once a borrower was found for the property, directing Celeste Montoya to deed the property back to Young's sister, (*id.*), and (2) assisting Borrower 5 purchase the Brandt Drive property with an FHA-insured mortgage loan that Borrower 5 obtained through false representations and documents. (*Id.*; Connor Decl., ¶¶ 22-31, Exs. 3a-3j.)

12. In June 2010, Young also made false representations to the FDIC-insured lender/mortgagor related to the real property she owns on Polaris Lane in Victorville, California, in order to convince the lender to approve a short sale of the property. (West Decl., ¶ 16.) HUD-OIG Special Agent West's investigation revealed that the attempted short sale of this property was based on fraud that began in 2005. In 2005, Young obtained a mortgage loan for herself and her husband, Bryan Young, for the property on Polaris Lane. (*Id.*, ¶ 17.)

4

13. In 2008, Bryan Young was removed from the title for the property on Polaris Lane and he obtained a VA-insured mortgage loan for a certain piece of real property on Buttermilk Lane in Victorville. In his application for the VA-insured mortgage loan for the Buttermilk Lane property, Bryan Young stated that he was single even though he was married to Young at the time. Bryan Young also completed stated that he was a renter at Polaris Lane, that his mother, living in Indiana was his closest living relative, and that the Buttermilk Lane property was the first piece of real property he had ever purchased. At approximately the same time, Young defaulted on the Polaris Lane property. (*Id.*)

14. Based on this investigation, HUD-OIG Special Agent West believed that Bryan Young made these representations, so as to conceal his debt obligations, including the defaults on the Polaris Lane property. Moreover, Young actively concealed her marriage in her documents relating to the short sale of the Polaris Lane property in an effort to appear unable to meet her financial obligations connected to the mortgage loan. (*Id.*)

## CONCLUSIONS OF LAW

15. The Fraud Injunction Statute, 18 U.S.C. § 1345, provides that "[i]f a person is (A) violating or about to violate . . . [18 U.S.C. §§ 1006, 1014, 1344 and 18 U.S.C. §§ 1341 and 1343], . . ., the Attorney General may commence a civil action in any federal court to enjoin such violation." 18 U.S.C. § 1345(a)(1)(A)-(B).

16. 18 U.S.C. § 1006 applies to "[w]hoever, being an officer, agent or employee of or connected in any capacity with . . . any Federal home loan bank . . . [or] [HUD] . . . with intent to defraud any such institution or any other company, body politic or corporate, or any individual, or to deceive any officer, auditor, examiner or agent of any such institution or of department or agency of the United States, makes any false entry in any book, report or statement of or to any such institution . . . ."

5

17. 18 U.S.C. § 1014 applies to "[w]hoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of the Federal Housing Administration . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation. . . or a mortgage lending business, or any person or entity that makes in whole or in part a federally related mortgage loan... upon any application, . . . purchase, [or] purchase agreement...shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. . . ."

18. 18 U.S.C. § 1341 applies to "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or unauthorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or . . . private or commercial interstate carrier, or takes or receives therefrom . . .."

19. 18 U.S.C. § 1343 applies to "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . .."

20. 18 U.S.C. § 1344 applies to "[w]hoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . .."

21. In addition to enjoining such violations, the Attorney General may seek an order restraining individuals from alienating, disposing, withdrawing, transferring, removing, or dissipating any property or assets traceable to §§ 1006, 1014, 1341, 1343,

6

1 and 1344, and seek the appointment of a temporary receiver to administer such relief.
2 *See* 18 U.S.C. 1345(a)(2).

3     22.    The Fraud Injunction Statute further provides that "[t]he court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States . . .." 18 U.S.C. § 1345(b).

    23.    A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365, 374 (2008).

    24.    Since *Winter*, the Ninth Circuit has reaffirmed the validity of the "serious questions" approach, which supports granting a preliminary injunction when there are serious questions going to the merits and the balance of hardships tips sharply in favor of the plaintiff, provided the other *Winter* elements are met. *Alliance for Wild Rockies v. Cottrell*, 613 F.3d 960, 965 (2010), *amended by* No. 09-35756, 2010 WL 3665149 (9th Cir. Sept. 22, 2010).

    25.    When seeking an injunction under the Fraud Injunction Statute, proof of irreparable harm is not necessary. *See United States v. Sriram*, 147 F. Supp. 2d 914, 935 (N.D. Ill. 2001).

    26.    Based on the evidence submitted by the United States, the United States has demonstrated probable success on the merits that Aguilera and Young violated 18 U.S.C. §§ 1006, 1014 and 1344, and a likely recurrence of such fraud in the absence of the requested injunctive relief since Young and Aguilera recently have participated in schemes to make false representations, supported by false statements and documents, to financial institutions insured by the Federal Deposit Insurance Corporation

("FDIC"). (West Decl., ¶¶ 10-18.) Moreover, the United States has demonstrated that the balance of hardships favors the United States, and that the public interest favors the entry of a preliminary injunction against Defendants.

27. Accordingly, the Court hereby grants the United States' Motion for Preliminary Injunction against defendants Elizabeth Aguilera and Alice Young.

Dated: 11/18/10

Honorable George H. King
United States District Court Judge

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

   /s/
INDIRA J. CAMERON-BANKS
Assistant United States Attorney
SEKRET T. SNEED
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

8